24CA0656 Peo in Interest AF 10-17-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0656
Costilla County District Court No. 23JV30000
Honorable Kimberly D. Cortez, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.F., III, A.F. and Z.F., Children,

and Concerning B.J.L.,

Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE BROWN
Welling and Hawthorne*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 17, 2024

---

Rebecca N. Rian, Special County Attorney, Alamosa, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

Harald Van Gaasbeek, Office of Respondent Parents' Counsel, Ft. Collins, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     In this dependency and neglect action, B.J.L. (mother) appeals the judgment terminating her parent-child legal relationships with A.F. III, A.F., and Z.F. (the children).  We affirm.

## I.     Background

¶ 2     The Costilla County Department of Social Services (the Department) filed a petition in dependency and neglect, alleging concerns about substance use and educational neglect.  The juvenile court adjudicated the children dependent and neglected and adopted a treatment plan for mother.  The court later amended the treatment plan to address additional concerns about domestic violence.  The Department then moved to terminate mother's parental rights.  More than a year after the petition was filed, the court granted the motion following a contested hearing.

## II.     Motion to Continue

¶ 3     Mother first contends that the juvenile court erred by denying her motion to continue the termination hearing.  We disagree.

### A.     Standard of Review and Applicable Law

¶ 4     When ruling on a motion to continue, the juvenile court must balance the reasons provided in the motion, the need to promptly resolve the proceeding, and the children's best interests.  *People in*

*Interest of T.E.M.*, 124 P.3d 905, 909 (Colo. App. 2005). When, as here, a child is under six years old at the time the petition is filed, the case is subject to the expedited permanency planning provisions (EPP), §§ 19-1-102(1.6), 19-1-123, C.R.S. 2024, and the court "shall not grant a delay unless good cause is shown and unless the court finds that the best interests of the child will be served by granting a delay," § 19-3-602(1), C.R.S. 2024.

¶ 5 A motion to continue is left to the juvenile court's sound discretion, and its ruling will not be disturbed on appeal absent a clear abuse of that discretion. *People in Interest of A.J.*, 143 P.3d 1143, 1150 (Colo. App. 2006). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair or when it is based on an erroneous understanding or application of the law. *People in Interest of M.V.*, 2018 COA 163, ¶ 52.

### B. Additional Background

¶ 6 Mother did not appear at the termination hearing. Mother's counsel moved to continue the hearing, stating that mother had left New Mexico the night before with the intention of appearing for the hearing in person, but she had issues with her vehicle on the way. The court recessed to give counsel more time to try to reach mother.

When those efforts were unsuccessful, counsel again moved to continue the hearing, arguing that mother "should be able to provide what evidence she has, especially related to the recent treatment and the progress she has made on the treatment plan."

¶ 7 The juvenile court denied the motion, finding there was not good cause for a continuance "given the pattern and history in the case." In particular, the court noted that it could not recall or find in the court file any instance where mother had appeared for court in person and that there "seem[s] to be a history of failing to appear."

¶ 8 Under the case management order, before the hearing, mother had disclosed a supervisor at a residential treatment program as an expert witness. Because mother had intended to appear and testify herself, her counsel told the other parties that he would probably not call the program supervisor. When the court denied the motion to continue, counsel requested leave to call the program supervisor "as a lay witness just to provide some information without respondent mother being here." Counsel did not offer or request to offer the program supervisor as an expert witness. The court

granted the request, and counsel called the supervisor out of order to accommodate the witness' schedule.

## C. Analysis

¶ 9 Mother contends that the juvenile court erred by denying her motion to continue because the denial "fundamentally altered [her] defense." As we understand it, she argues that she was prejudiced because (1) if not for the denial, she would have testified; and (2) she did not present expert testimony from the program supervisor because she planned to testify. But mother did not make this argument to the court and does not explain on appeal how the children's best interests would have been served by granting a delay. *See* § 19-3-602(1). Absent such a showing, the court was required to deny the motion to continue. *Id.* Because the court was so constrained, we discern no abuse of discretion in its denial of mother's motion to continue the termination hearing.

## III. Fit within a Reasonable Time

¶ 10 Mother next contends that the juvenile court erred by finding that she could not become fit within a reasonable time. We discern no basis for reversal.

## A. Applicable Law

¶ 11 An unfit parent is one whose conduct or condition renders them "unable or unwilling to give the child reasonable parental care to include, at a minimum, nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental health needs and conditions." § 19-3-604(2), C.R.S. 2024. In determining whether a parent's conduct or condition is likely to change within a reasonable time, "the court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition." *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 24. The court need not give a parent additional time, even when there has been recent progress on the treatment plan. *Id.* at ¶¶ 24, 28-29.

¶ 12 What constitutes a reasonable time is fact specific and must be determined by considering each child's physical, mental, and emotional conditions and needs. *Id.* at ¶ 25. When the EPP provisions apply, the court must consider the child's need to be placed in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123.

5

## B. Additional Background

¶ 13    Six weeks before the termination hearing, mother reached out to the caseworker and expressed a desire to go to a residential treatment program. This was not the first time mother expressed a desire to go to withdrawal management or residential treatment. The caseworker called multiple programs over the weekend to locate an opening and personally drove to Albuquerque, New Mexico to bring mother to a residential treatment program in Pueblo, Colorado.

¶ 14    Mother successfully completed a three-day withdrawal management program and began a residential treatment program at the same facility just over a month before the termination hearing. Although the program was designed to last thirty to sixty days, mother left against clinical advice after only two weeks. The program supervisor testified that mother "made minimal measurable progress in the two weeks she was there."

¶ 15    The program supervisor testified that mother expressed wanting to get into outpatient services, but did not accept the program's offer to connect her with another program when she left. The caseworker testified that mother did not reach out to her for

assistance in setting up services — or for any other purpose — after she left the residential treatment program.

## C.    Analysis

¶ 16    The juvenile court determined that mother was unfit based on her unaddressed and significant substance abuse issues. The court found that she had not complied with her treatment plan because she had (1) failed, without cause, to attend family time with the children and (2) demonstrated the same issues with substance abuse and inability to provide a stable environment for the children that were present at the start of the dependency and neglect action.

¶ 17    Unrebutted testimony at the termination hearing supports the court's findings regarding family time. The caseworker testified that mother confirmed eleven family time opportunities in the first three months of the case but attended only three of them. By the time of the termination hearing, the caseworker testified that the children did not have a relationship with mother; they had not seen her for ten months.

¶ 18    As to mother's substance abuse, mother asserts that her intentions to engage in treatment were sincere and that "with more time and more resources, [she] could become fit." But the juvenile

court specifically considered mother's recent stay at the residential treatment program. It found that "in starting and then leaving inpatient treatment after two weeks, [mother] was following the same pattern as she has in the last year with no sign something will change in the future or soon." It also found that mother's "substance abuse issues are significant and long term — entering an inpatient treatment program and then abandoning it after two weeks is not enough to show that [mother] has made changes necessary to ensure sustained sobriety and stability to care for the children."

¶ 19 The record supports these findings. The program supervisor testified that mother reported struggling with substance abuse for nearly ten years and disclosed a number of untreated mental health issues. The caseworker testified that mother indicated that she was reaching out to residential treatment programs throughout the case, but until the month before termination mother did not follow through. The caseworker also testified that she attempted to take mother to withdrawal management many times, even driving her to multiple locations before mother would back out. According to the caseworker, at other times mother would say she wanted to engage

and then disappear without contacting the caseworker for months at a time.

¶ 20 The juvenile court found that allowing mother additional time to become fit was not reasonable for the children. The court found that it was "clear that uncertainty does affect them and that continuing for additional time would not be reasonable." It also found that "uncertainty over these proceedings and whether [mother] will once again appear and disappear from their lives has created significant anxiety for the children." In particular, the court found that it was "critical for [A.F. III] to know as a child that his well-being will not be linked to [mother's] highs and lows."

¶ 21 The record supports these findings. The day before mother left the residential treatment program, she asked the caseworker to set up phone calls with the children. The caseworker did so, but by the time family time was arranged to begin four days later, mother had already left treatment. The children's placement provider testified that all three children regressed in their behaviors when they were told phone calls might be happening again with mother, and A.F. III, in particular, experienced high stress around the termination hearing.

¶ 22 Because the record supports the juvenile court's findings that mother was unlikely to become fit within a reasonable period of time for these children, we perceive no error in the court's legal conclusions.

## IV. Disposition

¶ 23 The judgment is affirmed.

JUDGE WELLING and JUDGE HAWTHORNE concur.